# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JERROLD D. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| S.A. GODINEZ; ILLINOIS DEPARTMENT OF CORRECTIONS; MARCUS HARDY; | ) ) | Judge Joan B. Gottschall |
| MICHAEL MAGANA; DAVID GOMEZ; ARTHUR FUNK, M.D.; IMHOTEP CARTER | ) ) | No. 13 CV 2045 |
| M.D.; KAREN ROBIDEAU; K. COAKLEY; L. DENNIS; CYNDI GARCIA, R.N.; ANNA MCBEE; and WEXFORD HEALTH SOURCES, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Jerrold D. Johnson ("Johnson") is proceeding with the assistance of recruited counsel. He filed an amended complaint on January 17, 2014, against S.A. Godinez, the Illinois Department of Corrections ("IDOC"), Marcus Hardy, Michael Magana, David Gomez, Arthur Funk, M.D., Imhotep Carter, M.D., Karen Robideau, K. Coakley, L. Dennis, Cyndi Garcia, R.N., Anna McBee, and Wexford Health Sources, Inc. (collectively, "Defendants"). Johnson alleges, pursuant to 42 U.S.C. § 1983 (Count I), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (Count II), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* (Count III), that Defendants exhibited deliberate indifference to his serious medical needs arising from his seizure disorder and have failed to reasonably accommodate his disability.

Defendants IDOC, Salvador Godinez, Marcus Hardy, Michael Magana, David Gomez, Karen Robideau, and Karemah Coakley (collectively, the "IDOC Defendants" or "IDOC") seek to dismiss Johnson's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Additionally, because this motion to dismiss does not affect the counts against Defendants Funk, Carter, Garcia, or Wexford Health Sources, Inc. (collectively, the "Wexford Defendants") or Count I (violation of 42 U.S.C. § 1983) against Defendants Hardy, Gomez, Robideau, Coakley, Dennis, and McBee, the IDOC Defendants request an extension of time in which to answer or otherwise plead to the remaining counts until thirty days after their motion to dismiss is resolved.

For the reasons stated below, the motion is denied in part and granted in part. IDOC's motion to dismiss Johnson's Amended Complaint is denied. IDOC's requests that the court dismiss Johnson's request for injunctive relief, Count I of the Amended Complaint against IDOC, and Counts II and III against IDOC are denied. The motion to dismiss individual defendants Godinez, Hardy, Magana, Gomez, Rabideau, Coakley, and Dennis in their official capacities is granted. The request for an extension of time to answer or otherwise plead on behalf of the Wexford Defendants and individual defendants for Count I is granted.

## I. FACTS

The court draws the following facts from Johnson's amended complaint and accepts them as true for purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

Johnson is an inmate at Stateville Correctional Center ("Stateville"), a correctional

facility operated by the State of Illinois and IDOC. In approximately 2005, while in IDOC custody at an institution other than Stateville, Johnson developed a neurological condition called brain arteriovenous malformation. This condition results in frequent and severe seizures and impairs Johnson's ability to walk without fear of falling.

Prior to being incarcerated at Stateville, Johnson underwent neurosurgery at the University of Illinois at Chicago Medical Center, received a prescription for anti-convulsant medication, and was issued a "low bunk/low gallery" permit to prevent injury in case of seizure during sleep. The low bunk/low gallery permit was also issued so Johnson could be housed in a ground floor cell that would allow for easy access to, and transportation from, Johnson's cell during medical emergencies. Further, a ground floor cell would permit Johnson to freely participate in prison programs, services, and activities.

When Johnson began his incarceration at Stateville, his IDOC medical records confirmed his seizure disorder and that he continued to be prescribed anti-convulsant medication. He was also re-issued a low bunk/low gallery permit. Despite this medical permit, IDOC initially assigned Johnson to a cell on an upper gallery. After Johnson suffered a seizure, IDOC moved him to a ground floor cell.

Johnson spent the next two years in a ground floor cell before IDOC reassigned him to a cell in an upper gallery. Johnson ascended and descended stairs daily to reach his cell. Johnson filed repeated grievances regarding his cell location, which were denied or ignored. On March 22, 2011, in the presence of correctional officers, Johnson fell down a flight of stairs after experiencing a seizure, injuring his head and back. On March 28, 2011, Johnson submitted an emergency grievance regarding his recent injury and its

connection with his housing assignment. He requested that his low bunk/gallery permit be honored. On April 4, 2011, Warden Hardy deemed Johnson's emergency grievance a "non-emergency" and instructed Johnson to resubmit his grievance in the "normal manner."

On May 12, 2011, a Stateville counselor, L. Dennis, responded to Johnson's grievance by writing: "According to the placement officer, Karen Robideau, 2 gallery in unit F is considered a low gallery. OTS reflects offender Johnson is housed in F213."[1] Because of this characterization, IDOC did not change Johnson's housing assignment. A little less than a month later, on June 3, 2011, Johnson had a seizure in his cell and passed out. A nurse arrived at his cell, and when Johnson regained consciousness, she reportedly told Johnson that "he must be alright (sic)" and left.

On June 6, 2011, correctional officers again witnessed Johnson have a seizure and fall down the stairs while climbing the stairs to his gallery cell. Johnson was admitted to the Health Care Unit ("HCU") for three days. On June 12, 2011, Johnson submitted a letter describing the events to Stateville's medical director, Dr. Funk, to no avail. On November 13, 2011, Johnson submitted another emergency grievance requesting that his medical permit be honored and that he be moved to a ground floor cell. Warden Hardy again determined that Johnson's grievance was a "non-emergency" and on November 18, instructed Johnson to file his grievance in the "normal manner." The same day, Johnson also spoke with Warden Hardy, who, in response to Johnson's requests to be transferred to ground floor housing and to receive medical treatment, stated, "[Y]ou look alright (sic)

---

[1] According to the complaint, the "low gallery" characterization is misleading. Although designated a "low gallery," Johnson's cell – 2 gallery unit F – is not a ground-floor cell. Inmates must ascend and descend stairs to go to and from cells in this gallery. (Amended Complaint, ECF No. 23 at 9.)

to me," and told Johnson to "be more careful" on the stairs.

On February 29, 2012 and March 6, 2012, Johnson submitted additional grievances regarding the injuries and mental anguish caused by his housing assignment. He again requested that his housing assignment be changed to ground floor housing. Johnson spoke to several others about his desire to be transferred to a ground floor housing assignment: IDOC Northern Director David Gomez, who responded "if Warden Hardy didn't think it was an emergency, then it must not be" and Director of Nursing Cyndi Garcia, who told Johnson, "as far as placement of a specific cell/gallery, that is not [in] the medical unit's control."

Johnson's anxiety about having a seizure while climbing or descending stairs to his cell grew severe. On September 6, 2012, he saw Dr. Catherine Larry, a mental health counselor, who made inquiries about ground floor housing for Johnson. Approximately two weeks later, Johnson was moved to a ground floor cell. He has been housed in a ground floor cell since September 2012.

## II. LEGAL STANDARD

"A motion under 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 635 (7th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a motion to dismiss, the complaint must have "facial plausibility," which occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

5

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009). In addition, on a defendant's motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

### III. ANALYSIS

The IDOC Defendants make three arguments in support of their motion to dismiss Johnson's complaint. First, they argue that Johnson's request for injunctive relief should be dismissed because "prisoner housing is an administrative decision left to the discretion of prison officials." (Def. Memorandum in Support of Motion to Dismiss, ECF No. 44, at 3.) Second, they argue that Johnson "fails to state a claim against any State defendant under the Americans with Disabilities Act or the Rehabilitation Act." (*Id.* at 4.) Finally, IDOC Defendants argue that Johnson's "monetary claims against the State defendants in their official capacities are barred by the Eleventh Amendment." (*Id.* at 5.)

**A. Johnson's Motion for Injunctive Relief**

IDOC Defendants argue that Johnson's request for injunctive relief should be dismissed because the court should afford deference to the administrative decisions of prison officials. The relief IDOC Defendants take issue with is Johnson's request that the court:

> Issue an injunction that Mr. Johnson be housed in a ground floor cell for the remainder of his incarceration and requiring Defendants to submit and implement a plan describing the measures they will take to provide Mr. Johnson with adequate medical treatment for the injuries sustained as a result of Defendants' deliberate indifference to Mr. Johnson's serious medical condition and failure to reasonably accommodate his disability.

(Amended Complaint at 17, ECF No. 23.)

IDOC Defendants assert that if the court granted this injunction it would "usurp the

6

discretion traditionally accorded prison officials." (Memorandum in Support of Motion to Dismiss at 3, ECF No. 44.) They characterize the requested relief as an injunction that would "force prison officials to specifically house him where he would prefer to be" and that because housing decisions are made by prison administrators, granting such an injunction would "invade the province of prison administrators." (*Id.* at 4.) IDOC Defendants reiterate this argument in their reply, stating:

> These cases [cited by Johnson in his response] simply do not support the broad and perpetual injunctive relief sought by [Johnson] against IDOC in this matter. Even still, [Johnson] admits that he has already received what he wants – a ground level cell. Despite this, [Johnson] nonetheless seeks the "assurance" (enforced through an injunction) that he will remain there for the rest of his life [sentence].

(Def. Reply at 2, ECF No. 50) (citations omitted).

IDOC Defendants further emphasize "[h]ere, [Johnson] seeks injunctive relief *in case* he is ever moved to a cell that is not on the ground floor , and he wants an injunction to be in effect for the remainder of his life." (*Id.* at 3 (emphasis as in original).)

Johnson argues that IDOC Defendants' argument is "nonsensical" and that prison officials "cannot exercise their 'discretion' regarding housing in a manner that violates the law and the Constitution." (Pl.'s Response, ECF No. 48, at 3). Instead, Johnson argues, injunctions are an appropriate form of relief where violations of the law or constitutional rights exist.

At this stage of the proceedings it is unnecessary and inappropriate for the court to determine the merits of Johnson's request for injunctive relief. The question is whether the complaint states a claim upon which relief may be granted. Both parties argue at length about the circumstances under which a court may grant an injunction related to prison conditions, and this reveals the crux of the issue. IDOC Defendants argue that

7

Johnson's request should be dismissed because an injunction is simply not something a court may issue in these circumstances. The court finds this unpersuasive as grounds for dismissal under Rule 12(b)(6).

Courts may intervene when prisoners suffer constitutional violations; prison management is not a third rail that federal courts may never touch. "Federal courts do not interfere with prison management, such as which facility a particular prisoner is housed [in], without a showing that a particular situation *violates the Constitution*." *Youngblood v. Wilson*, No. 07-CV-0079, 2008 WL 215739, at *1 (N.D. Ind. Jan. 24, 2008) (citing *Mendoza v. Miller*, 779 F.2d 1287, 1292 (7th Cir. 1986)) (emphasis added). For example, courts in this district have granted injunctive relief in a case where a legally blind inmate was denied access to prison programs and activities (the prison library, the showers, and the dining hall). *See Williams v. Ill. Dep't of Corrections*, No. 97-CV-3475, 1999 WL 1068669, at *8 (N.D. Ill. Nov. 17, 1999).

The IDOC Defendants argue that Johnson's case is distinguishable because the inmate in *Williams* dealt with an inmate who was *actively* being denied access to a program or activity, whereas Johnson is not actively being denied access to his request: a ground floor cell. The court understands the distinction but finds it unavailing because it mischaracterizes the type of injunction Johnson seeks.

What Johnson asks for, in effect, is a preventive injunction – one that will prevent him from ever being housed in a cell that is not on the ground floor. Courts in this circuit have treated such requests as requests for preliminary injunctions pursuant to Federal Rule of Civil Procedure Rule 65(a). *Manges v. Harman*, 11-CV-369, 2011 WL 4478458, at *1 (N.D. Ind. Sept. 26, 2011). Although an "extraordinary remedy," it is one that can

be granted "where there is a clear showing of need." *Id*. (citing *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999)). Here, though, the court need not decide whether such an injunction should be granted; it is sufficient to point out that this kind of relief is not, as IDOC Defendants argue, an impossibility if justified by the facts.

The question is instead whether Johnson has pled facts sufficient to establish a cause of action upon which relief may be granted. The court finds that he has. In his Amended Complaint, Johnson goes into great detail about his placement in non-ground-level cells, his transfer from ground-level cells to upper-level cells, and the injuries he sustained while being housed in upper level cells. In addition, IDOC Defendants do not appear to argue that Johnson has not pled facts sufficient to establish a violation of § 1983 for the alleged Eighth Amendment violations he endured. This, then, is potentially a situation where a federal court may "interfere with prison management" if in fact a "constitutional violation has occurred." *Youngblood*, 2008 WL 215739, at *1.

For these reasons, IDOC Defendants' motion to dismiss Johnson's claim for injunctive relief is denied.

### B. ADA and Rehabilitation Act Claims

#### 1. Sufficiency of Claims

IDOC Defendants next argue that Johnson's claims under the ADA and Rehabilitation Acts should be dismissed for failure to state a claim. IDOC Defendants argue that Johnson has failed to allege facts sufficient to meet the three elements of a claim under either the ADA or the Rehabilitation Act. Under both the ADA and the Rehabilitation Act, a plaintiff must allege that "(1) he is a qualified person; (2) with a disability; and (3) the Department of Corrections denied him access to a program or activity because of his

disability." *Jaros v. Ill. Dep't of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). Defendants do not dispute that Johnson is a qualified person and that he has a disability. Rather, IDOC Defendants argue that Johnson has failed to state an ADA or Rehabilitation Act claim because he has "failed to allege facts sufficient to demonstrate that he was denied access to an actual program or activity as a result of the alleged claim." IDOC Defendants base this argument on the premise that "incarceration is not a program or activity." (Def.'s Memo. at 5, ECF No. 44.)

Incarceration itself is not a program or activity, but other activities, like "meals and showers made available to inmates" are programs and activities. *Jaros*, 684 F.3d at 672. In *Jaros*, IDOC's "refusal to accommodate Jaros's disability kept him from accessing meals and showers on the same basis as other inmates." *Id.* The Seventh Circuit concluded that under these circumstances, Jaros pleaded a plausible claim for failure to make reasonable accommodations under the Rehabilitation Act.[2]

Johnson's amended complaint alleges that Johnson's "anxiety about having a seizure while climbing or descending the stairs to his upper gallery cell grew so severe that it impeded his daily life, including at times *preventing him from going to meals*." (Amended Compl. at 13, ¶ 52, ECF No. 23) (emphasis added). This allegation satisfies the "program or activity" element of the ADA and Rehabilitation Act claims. In fact, it precisely mirrors the lack of access to meals that the Seventh Circuit found satisfied the "program or activity" element. Additionally, this is not a "conclusory allegation," which is how IDOC Defendants construe it. The allegation that Johnson's housing arrangements prevented him from participating in daily life activities of inmates, including going to

---

[2] The analysis is the same under both the Rehabilitation Act and the ADA so the analysis of whether Johnson was denied access to a program or activity is the same under both acts. *Cassidy v. Ind. Dep't of Corrections*, 199 F.3d 374, 375 (7th Cir. 2000).

meals, is factually specific. This allegation does not, as IDOC Defendants argue, require the court to "draw inferences which are not apparent on the face of the amended complaint." (Def.'s Memo. at 5, ECF No. 44.)

### 2. Sovereign Immunity

The IDOC Defendants next argue that ADA and Rehabilitation Act claims against "the individual IDOC employees are barred." (Def. Memo. at 5, ECF No. 44.) Johnson asserts that this argument is "pointless" because Johnson's ADA and Rehabilitation Act claims against the IDOC employees are against the IDOC employees in their official capacities. (Pl.'s Brief in Opp. to Motion to Dismiss at 7-8, ECF No. 48.) The court agrees that individual Defendants Godinez, Magana, Gomez, Robideau, Coakley, Dennis, Garcia, and McBee were sued in their official capacities, and thus that the individual capacity argument is without merit. (Amended Compl. at 15-16, ECF No. 23.)

However, in their reply, the IDOC Defendants raise a different argument: that the official capacity claims against the individual defendants are invalid because the individual employees are not proper defendants. The court first notes that it is improper for IDOC Defendants to raise a new argument in their reply because "arguments raised for the first time in a reply brief are waived." *Satkar Hospitality Inc. v. Cook County Bd. of Review*, 819 F.Supp.2d 727, 740 (citations omitted).

Despite this procedural misstep, the IDOC Defendants raise a valid point. When the Rehabilitation Act and ADA "obligations of the individual defendants are derivative of the [government entity's] obligations, and any relief would come from the [government entity] itself, the claims against [individual defendants] are redundant and unnecessary" and should be dismissed. *Michael M. v. Board of Educ. of Evanston Tp. High School*

*Dist. No. 202*, 2009 WL 2258982 (N.D. Ill. July 29, 2009). Here, both IDOC and the individual defendants (in their official capacities) who work for IDOC are named as defendants in their official capacities. This is redundant and unnecessary. Therefore, the court dismisses Counts II and III of Johnson's amended complaint against individual defendants Godinez, Magana, Gomez, Robideau, Coakley, and Dennis in their official capacities. If Plaintiff disagrees, he may file a request for reconsideration within 14 days.

### A. Eleventh Amendment

IDOC Defendants finally argue that the Eleventh Amendment bars Johnson's monetary claims against state defendants. Defendants' brief focuses on the sovereign immunity of individual defendants in their official capacities. As discussed above, however, Counts II and III as to individual defendants are dismissed. Thus, the only question that remains is whether IDOC is immune from suit under the Eleventh Amendment.

#### 1. Count I (§ 1983 Claim)

IDOC first seeks to dismiss Count I on the grounds that it states an impermissible claim for money damages against a state agency. IDOC argues that "[e]ven in cases brought under 42 U.S.C. § 1983 raising constitutional claims, the Eleventh Amendment bar [to suit] remains" and that "[§] 1983 does not authorize suits against states." (Def.'s Memo. at 6, ECF No. 44.) IDOC draws the court's attention to *Kentucky v. Graham*, 473 U.S. 159, 169 n. 17 (1985) which states that "the Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity."

This argument is untenable. The footnote directly after the footnote cited by IDOC makes it very clear that in certain situations the State's immunity can be overcome. *Id*. at

n. 18. By naming IDOC as a defendant and seeking injunctive relief, the Eleventh Amendment bar poses no obstacle to Plaintiff's claim for relief. *See Edelman v. Jordan*, 415 U.S. 651, 674 ("[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief"). Furthermore, "monetary relief that is 'ancillary' to injunctive relief also is not barred by the Eleventh Amendment." *Id*. (citation omitted). IDOC makes much of Johnson's prayer for relief, which includes a request that the court "award Mr. Johnson actual, consequential, compensatory, punitive, and any other damages that the court may deem appropriate." (Amended Compl. at 17, ECF No. 23.) However, the prayer for relief also requests that the court issue an injunction requiring Johnson to be housed in a ground floor cell for the remainder of his incarceration. The request for equitable relief is consistent with Count I (the § 1983 claim), which states, "[N]o adequate remedy at law exists to ensure Mr. Johnson will be housed in a ground floor cell for the remainder of his incarceration." (Amended Compl. at 14, ¶ 60). It is reasonable for the court to infer that Johnson requests equitable relief, and not money damages, for his § 1983 claim. To the extent Johnson seeks monetary damages for Count I, monetary damages, but not ancillary awards, are prohibited by the Eleventh Amendment. For these reasons, IDOC's motion to dismiss Count I on Eleventh Amendment grounds is denied.

**2. Counts II and III (ADA and Rehabilitation Act Claims)**

IDOC next argues that it has sovereign immunity from the Rehabilitation Act and ADA claims. The court disagrees. Sovereign immunity does not bar Johnson's claims under the Rehabilitation Act or the ADA.

With respect to the Rehabilitation Act claim, "Illinois has waived its immunity from

suits for damages under the Rehabilitation Act as a condition of its receipt of federal funds." *Jaros*, 684 F.3d at 672 n. 5. Thus, IDOC may not claim sovereign immunity as grounds for dismissing the Rehabilitation Act claim.

As to the ADA claim, where the state's conduct is alleged to violate both the Constitution and the ADA, a state is not immune from suit under the Eleventh Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). Here, in addition to the ADA claim, Johnson claims that "Defendants' deliberate and unlawful indifference to Mr. Johnson's serious medical needs has deprived [him] of [his rights] under the Eighth and Fourteenth Amendments . . . and has resulted in actual physical and emotional harm to Mr. Johnson." (Amended Compl. at 14, ¶ 59.) Because Johnson has alleged Constitutional violations that resulted in actual harm in addition to his ADA claim, IDOC is not immune from suit under the Eleventh Amendment. For these reasons, the court denies IDOC's motion to dismiss Counts II and III.

### IV. Conclusion

For the reasons set forth in this Order, the motion to dismiss [43] is denied in part and granted in part. Specifically, IDOC's motion to dismiss Johnson's Amended Complaint is denied. IDOC's requests that the court dismiss (1) Johnson's request for injunctive relief, (2) Count I (§ 1983 claim) of the Amended Complaint against IDOC, and (3) Counts II (ADA claim) and III (Rehabilitation Act claim) against IDOC are denied. The motion to dismiss individual defendants Godinez, Magana, Gomez, Rabideau, Coakley, and Dennis in their official capacities is granted. The request for an extension of time to answer or otherwise plead on behalf of the Wexford Defendants and individual defendants for Count I is granted. IDOC shall answer or otherwise plead

14

within 30 days of entry of this order.


ENTER:


    /s/
JOAN B. GOTTSCHALL
United States District Judge


DATED:   January 9, 2015